Metal Office Furniture Company v. Commissioner.
Metal Office Furniture Co. v. Commissioner
Docket Nos. 107369 and 238.
United States Tax Court
1952 Tax Ct. Memo LEXIS 53; 11 T.C.M. (CCH) 1066; T.C.M. (RIA) 52313; October 28, 1952
J. S. Seidman, C.P.A., F. E. Seidman, C.P.A., and L. W. Seidman, Esq., for the petitioner. A. J. Friedman, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $44,023.54 for 1938, $32,531.52 for 1939 and $46,236.12 for 1940. The only issue for decision is whether the petitioner was availed of during one or more of the taxable years for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting its earnings and profits for the taxable years to accumulate beyond the reasonable needs of the business. Findings of Fact The petitioner filed its corporate returns for the taxable years with the collector of internal revenue for the District of Michigan. The petitioner was incorporated under *54 the laws of Michigan on March 14, 1912 for a period of thirty years. It was engaged at all times material hereto in manufacturing and selling steel office furniture and equipment. It added the manufacture of steel chairs to its line in 1938 and was endeavoring throughout the taxable years to obtain additional plant facilities in which to manufacture that new line but did not obtain such a plant until later. The petitioner had to maintain constantly a strong cash position to carry on its business successfully against its keen competition. The petitioner had to order its principal raw material, steel, approximately ninety days in advance and pay cash for it. Approximately ten weeks were required to complete a product for inventory and approximately ninety days elapsed from the time an item was sold until the petitioner could obtain payment therefor. The factory labor was paid weekly and office help twice a month. The following table shows the assets and liabilities of the petitioner at the end of the years 1937 through 1940: ASSETS
1937
1938
1939
1940
Cash
$ 24,959.30
$ 216,015.83
$ 189,613.45
$ 292,261.43
Marketable securities: Government
7,500.00
15,000.00
22,500.00
31,300.00
Other
83,389.38
84,871.93
94,214.43
72,206.97
Accounts and notes receivable
555,070.12
473,004.61
541,494.99
529,739.30
Inventories: Raw materials and supplies
177,253.27
120,167.00
189,413.37
228,741.75
Work in process and finished products
220,242.38
235,873.18
221,926.49
294,308.15
Land
29,699.18
29,699.18
37,199.18
45,149.18
Buildings, machinery, and equipment
575,086.05
582,553.12
596,912.65
624,338.15
Other
1,966.10
5,647.70
6,046.72
3,937.58
Totals
$1,675,165.78
$1,762,832.55
$1,899,321.28
$2,121,982.51
LIABILITIES
Accounts payable: Trade
$ 50,985.14
$ 39,832.10
$ 48,352.93
$ 59,133.78
Other
2,671.51
2,716.96
1,929.47
1,784.78
Notes payable to bank
45,449.00
Accrued liabilities: Federal income taxes
58,197.82
40,692.57
35,355.78
64,623.26
Other taxes
5,295.78
10,521.86
10,921.20
11,809.97
Interest
2,129.00
17,778.90
11,412.51
36,387.08
Salaries, wages, etc.
38,007.61
8,532.71
15,110.03
13,800.37
Collateral trust notes, 6% maturing Decem-
ber 1, 1949
425,800.00
425,800.00
425,800.00
425,800.00
Depreciation reserves
288,224.69
304,598.37
317,386.26
332,111.63
Bad debt reserves
45,000.00
50,000.00
45,000.00
45,000.00
Revaluation reserves
100,000.00
100,000.00
100,000.00
100,000.00
Preferred stock
279,137.50
279,137.50
279,137.50
279,137.50
Common stock
20,000.00
20,000.00
20,000.00
20,000.00
Capital surplus
93,635.30
93,635.30
93,635.30
93,635.30
Earned surplus
220,632.43
369,586.28
495,280.30
638,758.84
Totals
$1,675,165.78
$1,762,832.55
$1,899,321.28
$2,121,982.51
*55 The petitioner had a contingent tax liability of $65,000 for prior years pending in 1939 not shown in the above liabilities. $125,000 was the total amount paid in for stock of the petitioner. The collateral trust notes shown on the balance sheets were issued to stockholders and they and the preferred stock represent in part a capitalization of earnings. The capital surplus represents earnings. The earnings of the petitioner before taxes were $213,449.49 for 1938, $190,343.17 for 1939 and $246,828.13 for 1940. The petitioner paid dividends of $19,539.62 on his preferred stock during each of the taxable years and dividends of $14,000 on his common stock during the years 1939 and 1940. The investments of the petitioner in government and other securities were merely for the purpose of investing some of its reserve cash funds except that a part of the funds was invested in the stock of the bank with which it did business and that investment was for the purpose of improving its relations with that bank. All of the nongovernment investments were liquidated in 1943 and used to pay expenses. Receivables ranging from $107,000 to $139,500 represented loans made to assist a company with *56 which the petitioner did business and those loans were made to benefit the petitioner through those business relations. The amount of the depreciation reserves would have been inadequate to replace the depreciating facilities because costs had increased. The only loan of the petitioner to a stockholder during the taxable years was one of $14,000 at 4 per cent which was reduced to $12,000 at the end of 1938 and was paid in full during 1939. The petitioner during the taxable years did not intend to go out of business at the end of its corporate life but intended to have and actually had its corporate life extended in 1942 for another thirty years. The petitioner had been advised by counsel and believed during the taxable years that all of its preferred stock and all of its collateral trust notes would have to be retired at the end of its corporate life on March 14, 1942 even though its corporate life were to be extended beyond that date. The earnings and profits of the petitioner for the taxable years were not permitted to accumulate beyond the reasonable needs of the business. The petitioner was not availed of during any of the taxable years for the purpose of preventing *57 the imposition of surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting its earnings or profits to accumulate instead of being divided and distributed. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner accumulated about $400,000 of its earnings during the taxable years. It contends that it needed all of its available assets during those years, (1) for day to day requirements; (2) for normal growth; (3) to finance the new chair division; (4) to fund the accumulating depreciation; and (5) to provide for impending maturities of the preferred stock and the bonds. The only asset not obviously used in the business was the cash or equivalent ranging from about $116,000 at the beginning of 1938 to about $396,000 at the end of 1940. Current bills would have to be offset against that cash. The history of the petitioner shows steady growth and expansion and the evidence is that it anticipated continued growth and expansion, particularly through the introduction of the new line of chairs for which it would need about $500,000 of operating funds over and above those which *58 it had needed previously. It needed about $300,000 of cash for routine operations. It also needed funds to expand its facilities from time to time and eventually it would need additional funds to replace any of its old plants which would have to be abandoned for one reason or another. It is possible that the witnesses have overstated some of these needs but the petitioner has shown by a fair preponderance of the evidence that its earnings were not permitted to accumulate during the taxable years beyond the reasonable needs of the business and that it was not availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting earnings or profits to accumulate instead of being divided or distributed. It follows that the Commissioner erred in applying section 102. Decisions will be entered under Rule 50.